IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DEMON V. SLATER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-cv-372-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Demon V. Slater ("Plaintiff" or "Slater") originally applied for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 *et seq.*, on August 23, 2007. (Tr. 17). After being denied, Slater timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on February 18, 2010. (Tr. 28). Slater subsequently petitioned for review to the Appeals Council who rejected review of Slater's case on March 17, 2011. (Tr. 1). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After a thorough review of the record in this case and the briefs of the parties, the Court concludes that the decision of the Commissioner should be REVERSED and this case REMANDED to the Commissioner for further proceedings.

### I. NATURE OF THE CASE

Slater seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial

evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the

decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, re-weigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However,

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

Slater, age 36 at the time of the hearing, completed the twelfth grade and received a certificate of completion. (Tr. 37, 41). Slater had special education classes in high school and has limited reading and writing abilities. (Tr. 41-42). Slater performed past relevant work as an industrial cleaner (unskilled, medium). (Tr. 26). Slater has not engaged in substantial gainful activity since his alleged disability onset date of August 23, 2007. (Tr. 19). Slater has not "ever really worked," except for a couple positions which spans from a few days to a few weeks. (Tr. 41-42). Slater's mother supports him from her fixed income. (Tr. 41). Slater claims he is unable to work because he suffers from major depression, anxiety, diabetes, depression, and an IQ score that falls within the range of mental retardation. (Tr. 39-40); *see* Doc. 12 at 4. Slater received disability benefits in the past until the benefits were terminated upon his incarceration. (Tr. 37).

Slater's alleged disabilities stem from multiple sources. (Tr. 42-43). A doctor diagnosed Slater as suffering from diabetes in 1997. (Tr. 42). He received regular treatment to control his diabetes, while he received disability benefits and also while incarcerated, but upon release Slater has been unable to afford his medications except when he was able to attain his medications free of charge. *Id.* Slater alleges that his diabetes has caused him to be admitted to the hospital and the doctors have had to increase his insulin dosage. (Tr. 43). Slater alleges that he has diabetic neuropathy which causes pain and numbness in his lower legs, feet, and sometimes in his left hand. *Id.* Slater also alleges that he suffers from hypertension (high blood pressure). *Id.* Slater is also unable to afford the medications to control his neuropathy and hypertension. *Id.*

Since Slater's release from incarceration, he alleges that he suffers from anxiety and major depression. (Tr. 43). Slater alleges that his anxiety and depression cause him to randomly

begin crying, to feel shortness of breath and pain in his chest, and difficulty sleeping.  (Tr. 44).  Slater claims that when on his medication these symptoms subside and he is able to sleep well, but at the moment he is unable to afford his medications.  *Id.*  Slater also claims that he has difficulty getting along with other people and mostly keeps to himself.  (Tr. 46).  Slater alleges that he suffers from mental retardation as defined in the listings of impairments section 12.05.  *See* Doc. 12 at 3.  IQ tests reveal Slater has a score of 64 in verbal intelligence IQ, 62 in performance IQ, and a full scale IQ of 60.  *Id.* at 4.  Slater was in special education classes in high school and alleges that he cannot read or spell very well.  (Tr. 42).  Slater also claims that while watching television he is unable to concentrate or follow the storyline.  (Tr. 45).

      Slater received treatment from various medical practitioners and the ALJ considered the medical records from these practitioners.  (Tr. 19-20).  The records of Charles A. Wood, M.D. from September and October of 2002 show that Slater was monitored for hypertension, diabetes, and peripheral neuropathy.  (Tr. 19).  Slater had elevated glucose and hemoglobin A1C levels.  *Id.*  Also, Dr. Woods found Slater suffers from depression post a suicide attempt.  *Id.*

      In November of 2007, Mark B. Ellis, D.O. performed a consultative physical evaluation.  *Id.*  Slater reported to Dr. Ellis that he suffers from depression, poor reading skills, diabetes, neuropathy with bilateral leg burning and numbness, decreased sensation to light touch in the feet, and leg weakness.  *Id.*  Dr. Ellis found decreased sensation to light touch from Slater's knees down "becoming more prominent" at the feet, as well as decreased sensation on the bottom and back of Slater's feet.  Dr. Ellis' diagnostic impression was "poorly controlled diabetes with diabetic neuropathy; and hypertension, high cholesterol, and depression all by history."  *Id.*  Dr. Ellis recommended optimal diabetic care; however, a month later Slater was

admitted to Dale Medical Center for uncontrolled diabetes mellitus with a glucose level of 700, blurred vision, nausea, vomiting, hypertension, and neuropathy.  *Id.*

Also in November of 2007, Randall Jordan, Psy.D saw Slater for a consultative mental evaluation.  (Tr. 20).  Slater reported depression with chronic sadness, sleep disturbances, and being in special education classes while in school.  *Id.*  Dr. Jordan noted that Slater exhibited restricted affect, compromised memory, and below average fund of information.  *Id.*  Dr. Jordan administered a Wechsler Adult Intelligence Scale Third Edition ("Wechsler") which tested Slater on verbal, performance, and full scale IQ.  *Id.*  Slater earned scores of 64, 62, and 60, respectively.  *Id.*  Dr. Jordan noted that these scores are indicative of intellect in the range of mental retardation.  *Id.*  However, Dr. Jordan also noted a diagnostic impression of malingering.  *Id.*

In June of 2009, Slater returned to Dale Medical Center with complaints of chest pain. (Tr. 19).  In July of 2009, Slater underwent a stress test which revealed "resting baseline hypertensive heart disease and a marked accelerated hypertensive response to chemical stress." *Id.*  After being released from Dale Medical Center, Connie Chandler, M.D. followed Slater for chest pain, diabetes, and hyperlipidemia.  (Tr. 20).  Slater received numerous medications to control his symptoms.  *Id.*  The ALJ noted that no noticeable physical symptoms or complications associated with hyperlipidemia were evidenced, and because of such the ALJ found that it has no effect on Slater's ability to work.  *Id.*  In August of 2009, Dr. Fernando Lopez at Spectra Care saw Slater for his "depressive disorder" and "psychotic features."  *Id.* Slater claimed he had "sleep disturbances with intermittent nightmares, visual hallucinations, panic attacks, nervousness, and paranoia."  *Id.*  Dr. Lopez proscribed psychotropic medications to Slater to manage his depressive and psychotic symptoms.  *Id.*

## V.  ISSUES

Slater raises two issues for judicial review:

(1)  Whether the ALJ failed to consider if Slater's medically determinable impairments met or equaled listing 12.05(C); and

(2)  Whether the ALJ's Residual Functional Capacity finding failed to include the required "function-by-function" assessment.
*See* Doc. 12 at 3.

## VI.  DISCUSSION AND ANALYSIS

The plaintiff raises several issues and arguments related to this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Wiggins v. Schwiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) in that "[n]o presumption of validity attaches to the Secretary's determination of the proper legal standards to be applied in evaluating claims").  However, the Court pretermits discussion of the plaintiff's specific arguments because the Court concludes that the ALJ erred as a matter of law at step three of the sequential analysis.  Ergo, the ALJ's conclusion that the plaintiff is not disabled is not supported by substantial evidence.

The ALJ notes:

> At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20CFR 416.920(d), 416.925, and 416.926).  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 416.909, the claimant is disabled.

(Tr. 18).

The burden of proof rests on a claimant to establish a prima facie case of qualifying disability. *Phillips*, 357 F.3d at 1237-39. Slater argues that "the ALJ failed to consider whether Mr. Slater's medically determinable impairments met or equaled listing 12.05(C)." (Pl. Br. 3). Slater provided sufficient medical evidence to meet the prima facie requirement in *Phillips*, 357 F.3d at 1237-39. The record is replete with references to anxiety and depression, with the ALJ also noting the "full scale IQ scores of 64, 62, and 60." (Tr. 20). Plaintiff directly argues the listing of 12.05(C) in the record of the hearing (Tr. 39-40) as well as testifying to other limiting factors. (Tr. 40-50).

In *Fitts v. Massanari,* the court "notes that the ALJ made an error more fundamental regarding the listings in that he never once mentioned Listing 12.05, specifically 12.05(C), in his decision denying benefits." Case No. CA 00-0624-BH-C, 2001 WL 530475, *3 (S.D.Ala. May, 2001). The court held that the ALJ erred in failing to include mild mental retardation in the list of severe impairments and in failing to analyze the evidence in light of the specific requirements of listing 12.05. *Id*. at *2. In *Fitts* the court noted that the ALJ's finding documented both a physical impairment which imposed an "additional and significant work-related limitation of function" and that the record also contained evidence of a valid verbal, performance or full scale IQ score of 60 through 70. *Id*.

The Court recognizes that a valid IQ score does not mean that conclusive evidence of mental retardation exists, however the validity of IQ score must be addressed by the ALJ. *Thomas v. Barnhart*, Case No. 04-12214, 2004 WL 3366150 (11th Cir. Dec. 7,

2004)(where the Eleventh Circuit specifically noted that the ALJ did not specifically address the validity of the claimant's IQ score of 69 and there was "significant evidence" that the score was valid and remanded the case so that the ALJ may properly consider the validity of the claimant's IQ score.).  While the Court concludes there is some question as to the validity and accuracy of the IQ score of Slater, there is no analysis done by the ALJ for the Court to consider.  *See e.g. Outlaw v. Barnhart*, 197 Fed.Appx. 825 (11th Cir. 2006) (where the court held that a "valid IQ score is not conclusive of mental retardation when the IQ score is inconsistent with other evidence in the record about claimant's daily activities.").

      The Commissioner argues that Slater did not carry his burden to produce evidence that he met the criteria of the listing.  (Def. Br. 13, at 7).  "[A] claimant must have a diagnosis included in the Listings and must provide medial reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement."  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525).  The ALJ must consider whether the claimant meets or equals the listings presented by the claimant.  *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984).  While the ALJ does not need to mechanically recite the fact that a claimant does not meet a listing in his decision, and that the failure to meet the listing may be implied from the record, the ALJ must develop a full and fair record sufficient for this Court to review.  *Todd*, 736 F.2d at 642.  (*citing Ford v. Secretary of Health and Human Services*, 659 F.2d 66, 69 (5th Cir. 1981)).  Additionally, the Court notes that Slater bears a burden "of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim."

*Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The Court makes the limited ruling that the issue of mental retardation pursuant to the listing 12.05(C) was raised sufficiently by Slater to show a prima facie case of a possible ailment that, by itself, can be found to be disabling, or disabling in conjunction with other disabilities, and the ALJ failed to address it in either the hearing or the opinion. (Tr. 20, 39-40). The Court notes that the ALJ directly addressed and discussed the Listings for 12.04 and 12.06, looking at the "paragraph B" and "paragraph C" requirements, but conspicuously failed to address the 12.05(C) Listing that was directly argued by the Claimant. (Tr. 20-21, 39-40).

Furthermore, because the ALJ did not recognize the evidence that Slater suffers from mental retardation, he did not properly consider the effects of this impairment on Slater's ability to work. Consequently, the Court cannot determine whether the ALJ's conclusion that Slater is not disabled is properly supported by substantial evidence. *See Todd*, 736 F.2d at 642. It is plain that the plaintiff suffers from physical and non-physical impairments, but it is less clear as to the effect of those impairments. "Even a 'mild' mental impairment may 'prevent [a] claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies.'" *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (quoting *Gagnon v. Sec'y of Health and Human Serv.*, 666 F.2d 662, 666 n. 8 (1st Cir. 1981)).

For these reasons, the Court concludes that the Commissioner erred as a matter of law, and that the case warrants remand for further proceedings regarding whether the IQ score is valid, and if there are other mental or physical impairments that would cause the claimant to meet the listing under 12.05(C). The ALJ must consider every impairment

alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe – either singly or in combination – to create a disability. *See Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986). All of the plaintiff's impairments must be considered in combination even when the impairments considered separately are not severe. *Hudson v. Heckler,* 755 F.2d 781, 785 (11th Cir. 1985). In light of the ALJ's failure to fully and fairly consider the evidence in the record of the plaintiff's possible mental retardation, the Court concludes that the ALJ failed to meet his burden in this regard. As a result of his failure to consider the plaintiff's impairments in combination, doubt is necessarily cast upon the ALJ's conclusion that the plaintiff is not disabled.

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. A separate order will be entered.

Done this 23rd day of March, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE